* The opinion is certified for publication with the exception of parts II, IV and V.
OPINION
Johnette M. appeals an order of the juvenile court terminating her parental rights to her minor daughter, Tameka M. Johnette *Page 1749 
contends the court erred by denying her competent representation by an attorney at the six-month review hearing preceding the termination hearing. She also contends there was insufficient evidence in support of the court's findings at the six-month review hearing that (i) she did not contact or visit Tameka during the prior six-month period, (ii) the County of San Diego Department of Social Services (DSS) made reasonable search efforts to locate her, and (iii) DSS provided or offered to her reasonable reunification services. For the following reasons, we affirm.
 I
Johnette gave birth to Tameka on April 14, 1993. Tameka tested positive for cocaine at birth, and on April 20, DSS filed a dependency petition under Welfare and Institutions Code[1]
section 300, subdivision (b) alleging, in part, Tameka was at substantial risk of serious physical harm or illness because of her mother's admitted drug usage and lack of prenatal care. Johnette told a DSS social worker she had used cocaine during the latter part of her pregnancy and even on the date of Tameka's birth, and had been using crack cocaine for about five years. A DSS information form dated April 16, indicated Johnette's address was "421 Aurora St. 92102." Another DSS report dated April 19 showed this same address for Johnette and also indicated it was in San Diego.
The initial detention hearing for Tameka was scheduled for the morning of April 20, and Johnette had been verbally informed of this hearing the day before. Johnette appeared at the courthouse the morning of April 20 and was personally served with a copy of the petition at that time. That day, she also filled out a financial statement to determine her ability to pay for legal counsel, and in particular wrote her address as "421 Orora" in San Diego and indicated she had no telephone. When the hearing was delayed until the afternoon that day, however, she left and was not present when the petition was heard, and her later appointed attorney, Roberto Quinones, represented to the court she had been present in the morning, but was not present at 1:30 p.m. At the hearing, the court made a prima facie finding Tameka was a minor described by section 300, subdivision (b) and out-of-home detention was necessary. The court ordered Tameka detained at Hillcrest Receiving Home, a foster home, or with a relative. It directed DSS to evaluate the home of Tameka's maternal aunt for possible placement. It ordered supervised visitation for Tameka's parents[2] once a week and set a readiness hearing for May 5. A few days later, the court clerk sent a copy of the petition to Johnette by certified mail addressed to the Aurora Street address. *Page 1750 
An additional information report dated May 3 by a DSS social worker indicated Tameka's foster mother reported Johnette and a male companion visited Tameka at the foster home, but Johnette did not call in advance to arrange the visitation. Johnette told the foster mother she did not have her telephone number, and that she had left messages with the DSS social worker. However, the social worker denied receiving any messages from Johnette other than one message on April 20 indicating she was not staying for the delayed hearing.
On May 5, the readiness hearing was held, but Johnette did not appear and the court appointed Quinones to represent her. The court found Johnette had been served with a copy of the petition and had been given notice as required by law. It ordered Johnette's visitation to be supervised and that she not visit the foster home without prior authorization from the social worker and 48 hours' advance notice to the foster mother. The social worker was given the discretion to increase visitation. The court also ordered Johnette to participate in drug testing and substance abuse programs and counseling. The readiness hearing was continued until May 19 to allow Johnette's counsel an opportunity to discuss the case with her. The court clerk mailed a copy of the court's minute order from the hearing, which included the time and date of the next hearing, to Johnette at the Aurora Street address.
Johnette did not appear at the May 19 hearing, and her counsel stated he had no information regarding where she was. He had sent her a letter on April 22 informing her of the May 5 hearing and did not think it had been returned to him, and he had not sent out a subsequent letter. The court found Johnette had been given notice of the hearing as required by law and proceeded to find the allegations of the petition to be true by clear and convincing evidence. The court set the dispositional hearing for June 2 to allow Johnette's counsel an opportunity to contact her and obtain her appearance. The court clerk mailed a copy of the court's minute order, which included the time and date of the next hearing, to Johnette at the same Aurora Street address.
An additional information report by the DSS social worker indicated she had been called by Charles L. who indicated he could possibly be Tameka's father and inquired about paternity testing. He acknowledged visiting Tameka with Johnette on or about April 28. The social worker advised him to attend the June 2 hearing if he thought he might be Tameka's father. The report also indicated Johnette's friend and the foster mother for Tameka's sister, had told the social worker Johnette had recently visited her other children and she did not believe Johnette "had any inclination to begin addressing her problems." *Page 1751 
Johnette did not appear at the June 2 dispositional hearing, but was represented by her counsel who indicated he had attempted to leave messages for her, but had no contact with her, and, accordingly, he could not take a position regarding the disposition. Charles appeared at the hearing and requested a paternity test, and the court continued the hearing until June 9 so Charles could consult with an attorney. The court clerk mailed a copy of the court's minute order, again indicating the time and date of the next hearing, to Johnette at the Aurora Street address.
Johnette again did not appear at the next hearing on June 9, but was represented by her counsel. Charles appeared and an attorney was appointed for him. After he answered some preliminary questions about the possibility of his paternity, the court ordered the testing and ordered Charles, Johnette and DSS to cooperate in the testing. The court continued the dispositional hearing until June 17 to allow Charles's counsel to become familiar with the case. The court clerk again made the usual mailing to Johnette.
With the paternity issue yet unresolved, the court proceeded with the dispositional hearing on June 17. Johnette again was not present, but was represented by her counsel. He had sent her a letter informing her of the hearing, but had received no response. The court declared Tameka to be a dependent of the court and removed custody from her parents and placed her with DSS for suitable placement and noted she was placed in a foster home. The court ordered Johnette to comply with the reunification plan. It set a six-month review hearing for December 16. The court clerk made the usual mailing of the court's order to Johnette. A subsequent notice of the six-month review hearing was mailed to Johnette by the court clerk to the same Aurora Street address, but it erroneously stated the hearing date was December 6 rather than December 16. It also indicated DSS was recommending no change in the custody or status for Tameka.
In a DSS report dated November 29 in advance of the six-month review hearing, it was reported the foster mother indicated she had only one contact with Johnette and that was when Tameka was just four days old. The report indicated Johnette had made no further efforts to contact Tameka since that date, and Johnette's current whereabouts were unknown. Many letters were sent to Johnette which were returned unopened. In particular, a letter containing referrals for reunification services was mailed on July 12, but came back unopened. DSS had been conducting search efforts to locate Johnette, including checking the following: "Local phone directory; CRT; MEDS; Sheriff/police/local jails; state prison; federal jail; local probation/parole; DMV; criminal record; Registrar of Voters; contact Welfare; Social Security letter; and shelter for indigents." Attempts were also made to contact *Page 1752 
Johnette through Tameka's maternal aunt at her given telephone number, but DSS had received no return calls from her. Charles also had indicated he might be able to locate Johnette, and he was told it was very important he do so, but he had provided DSS with no further information regarding her whereabouts. The report indicated the search efforts by DSS were ongoing. The report stated the recommendations of DSS that Tameka be placed in a foster home, that reasonable services continue to be provided or offered to her parents, and the reunification plan remain in effect continued to be appropriate.
A paternity test was conducted on November 30.
Johnette did not appear at the December 16 hearing, but was represented by her counsel. Since the paternity test results had not yet been received, the hearing was continued until January 12, 1994. The court clerk made the usual mailing to Johnette at the Aurora Street address.
Johnette again failed to appear at the January 12 hearing, but was represented by her counsel. The court continued the hearing until January 19, because Charles's counsel was not present. However, the court had received the paternity test results and made a finding Charles was not the biological father of Tameka. An additional information report by DSS filed with the court on this date discussed the paternity test results, and included the following statement: "The accuracy of the test may have been enhanced because both parents (the mother alleged father) were present with the minor for blood sampling."
Johnette did not appear at the January 19 hearing. Her counsel was not present, but Gregory Obenauer, counsel for Charles, made a special appearance for him for Johnette. DSS began by suggesting the court follow its recommendations, but the court then noted Johnette had not visited Tameka for the past six months. A discussion regarding the possibility of proceeding toward a section 366.26 termination hearing resulted in DSS's indication to the court it would be willing to change its recommendation accordingly. Counsel for Tameka had no objection to this proposed course of action. The court stated such course of action was appropriate, noting Johnette had not contacted or visited Tameka in the last six months. The court stated records showed "the last visit mother had with the minor is on April 18, four days after the child was born." The court found Johnette's whereabouts remained unknown, and found DSS had made reasonable search efforts to locate and notify her of these proceedings. It also found DSS had provided or offered to Johnette reasonable services to reunify her with Tameka. The court then continued Tameka as a dependent of the court with placement in foster care, *Page 1753 
and terminated reunification services for Johnette. It set a section 366.26 hearing for 120 days later on May 18. At that point, Obenauer made the following statement to the court: "Your Honor, I have to make a comment on behalf of Mr. Quinones [Johnette's counsel]. He takes no position."
DSS continued its search efforts to locate Johnette, but such efforts were unsuccessful. In fact, on February 3, a DSS representative attempted to serve Johnette at 421 Aurora Street, and determined "that the address is an apartment building which is entirely boarded up." Accordingly, Johnette was noticed of the section 366.26 hearing by publication.
On May 18, Johnette had been located in the Las Colinas jail. The court continued the hearing until July 27 and issued an order to jail officials to produce Johnette at that time.
On May 19, Johnette was personally served at the jail with written notice of the July 27 section 366.26 hearing.
On July 27, Johnette failed to appear at the section 366.26 hearing, but was represented by her counsel. DSS believed she had been released from jail before the hearing date. In fact, an additional information report by DSS noted Johnette had given birth to another daughter on July 5, and that baby was living with the maternal aunt. DSS's recommendation for the section 366.26 hearing was that Johnette's parental rights be terminated and Tameka be placed for adoption. Johnette's counsel requested an additional 20 days to contact his client, but the court denied his request. The court proceeded to find Johnette had been given notice and that adoption is in the best interest of Tameka. It then terminated Johnette's parental rights and referred Tameka for adoptive placement.
On September 19, Johnette requested to view the court file "[t]o find out if I lost all my rights and when." A week later, she filed her notice of appeal.
 II*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 III (1) Johnette next contends there was insufficient evidence in support of the court's finding she had not contacted or visited Tameka during the *Page 1754 
six-month period preceding the hearing. Specifically, she argues the information contained in the DSS report regarding the paternity test contradicts the court's finding, such that clear and convincing evidence of the finding was lacking. As quoted above, that report stated, "both parents (the mother alleged father) were present with the minor for blood sampling." She asserts this proves she had "contact" with Tameka.
Although the court apparently was unaware of this statement in the report, we conclude this evidence does not contradict the court's finding Johnette had not contacted or visited Tameka for six months. Section 366.21, subdivision (e) provides in pertinent part: "If . . . the court finds by clear and convincing evidence that . . . the parent has failed to contact and visit the child, the court may schedule a hearing pursuant to Section 366.26 within 120 days." (Italics added.) Even assuming Johnette was present at the paternity testing at the same time as Tameka, there is no indication she had contact with her. Further, even if she had some "contact," we conclude such casual or chance contact does not preclude the application of section 366.21, subdivision (e). As emphasized above, a section 366.26 hearing may be scheduled if a parent has failed to contact and visit the child. This language anticipates the parent will have made some effort to visit the child during the six-month period in order to prevent a section 366.26 hearing. Here, it is clear Johnette made no efforts to visit Tameka during the six-month period, even though she knew where Tameka's foster mother lived and had visited Tameka there eight months earlier. (Cf. In re MoniqueS. (1993) 21 Cal.App.4th 677, 682 [25 Cal.Rptr.2d 863].) We conclude whatever nominal "contact" Johnette may have had with Tameka at the paternity testing site was insufficient to contradict the court's finding of no contact or visitation for purposes of setting a section 366.26 hearing.[4]
 IV, V*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Page 1755 
 DISPOSITION
The order is affirmed.
Benke, J., and Midlam, J.,** concurred.
[1] All statutory references are to the Welfare and Institutions Code.
[2] No one appeared as Tameka's father at the hearing.
[4] We also note Johnette continued to display a lack of effort or concern in reunifying with Tameka after the six-month review hearing, because she did not contact or visit Tameka thereafter (even after being personally served with notice of the section 366.26 hearing which could, and did, terminate her parental rights). Thus, for a period of 15 months before the section 366.26 hearing, Johnette failed to visit Tameka or make any other efforts to reunify with her.
* See footnote, ante, page 1747.
** Judge of the San Diego Supeiror Court sitting under assignment by the Chairperson of the Judicial Council. *Page 1756